UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| MARY A. POCKLINGTON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:16 CV 62 JMB ) ) |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

# MEMORANDUM AND ORDER[2]

Plaintiff Mary A. Pocklington ("Plaintiff") appeals the decision of the Acting Commissioner of Social Security ("Defendant") denying her applications for disability benefits under Title II of the Social Security Act, see 42 U.S.C. §§ 401 et seq., and supplemental security income under Title XVI, see 42 U.S.C. §§ 1381 et seq. Substantial evidence supports the Commissioner's decision, and therefore it is affirmed. See 42 U.S.C. § 405(g).

## I. Procedural History & Summary of Memorandum Decision

On July 8, 2013, Plaintiff filed applications for disability benefits, arguing that her

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] This case is before the undersigned for judicial review pursuant to 42 U.S.C. § 405(g), with the consent of the parties under 28 U.S.C. § 636(c).

disability began on January 1, 2013, as a result of coronary artery disease, hypertrophic cardiomyopathy, high cholesterol, hypertension, diabetes, and chronic obstructive pulmonary disease. (Tr. 183-96) The alleged onset date was later amended to April 19, 2013. (Tr. 13, 229) On August15, 2013, Plaintiff's claims were denied upon initial consideration. (Tr. 93-97) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at the hearing (with counsel) on July 16, 2015, and testified concerning the nature of her disability, her functional limitations, and her past work. (Tr. 35-64) The ALJ also heard testimony on that date from Denise Weaver, a vocational expert ("VE"). The VE opined as to Plaintiff's ability to secure other work in the national economy, based upon Plaintiff's functional limitations, age, and education. (Id.) After taking Plaintiff's testimony, considering the VE's testimony, and reviewing the rest of the evidence of record, the ALJ issued a decision on July 29, 2015, finding that Plaintiff was not disabled, and therefore denying benefits. (Tr. 9-26)

Plaintiff sought review of the ALJ's decision before the Appeals Council of the Social Security Administration. (Tr. 1-5) On July 21, 2016, the Appeals Council denied review of Plaintiff's claims, making the July 2015 decision of the ALJ the final decision of the Commissioner. Plaintiff has therefore exhausted her administrative remedies, and her appeal is properly before this Court. See 42 U.S.C. § 405(g).

In her brief to this Court, Plaintiff raises one issue, the ALJ erred by failing to provide her medical records to Dr. Randy Foster, one of the consultative examiners. Plaintiff further argues that the ALJ's subsequent decision to accord Dr. Foster's report only partial weight was the result of Dr. Foster not having her medical records during the consultation. The Commissioner filed a detailed brief in opposition contending that the ALJ's decision is based

on substantial evidence.

As explained below, the Court has considered the entire record in this matter. Because the decision of the Commissioner is supported by substantial evidence, it will be affirmed.

## II. The Hearing Before the ALJ

The ALJ conducted a hearing on July 16, 2015. Plaintiff was present with an attorney and testified at the hearing. The VE also testified at the hearing.

### A. Plaintiff's Testimony

Plaintiff began her testimony by noting that she has been unable to work since April 18, 2013, after having a surgical procedure placing a stent in her heart. (Tr. 38) Plaintiff lives alone in a house, and her daughter-in-law helps with the chores and takes Plaintiff grocery shopping. (Tr. 55, 57, 59)

Plaintiff acknowledged that she returned to work part time but she had to quit because her hours were cut and she could not perform the job duties. (Tr. 39) Plaintiff worked at the front desk of a hotel and sometimes missed work due to her depression. (Tr. 52) Her job duties included mopping the front hall, cleaning the breakfast bar, moving boxes of computer paper, moving tables and chairs, and vacuuming. (Tr. 54) Plaintiff testified that her back pain caused difficulty lifting, bending, and stooping on the job.

Plaintiff testified that she experiences shortness of breath when she walks. (Tr. 40) Plaintiff testified that she uses oxygen at night, and she takes nitroglycerin to alleviate her chest pain. (Tr. 40-41) In 2014, Dr. Habib performed another heart procedure inserting additional stents. (Tr. 42) Dr. Gessling prescribed medications for Plaintiff's diabetes. Plaintiff testified that she also has narrowing of her spine, and she had neck surgery earlier in 2015. (Tr. 33) Plaintiff takes medicine to alleviate the muscle spasms in her neck. (Tr. 46)

3

Plaintiff testified that she experiences depression and crying spells and constant back pain. (Tr. 49, 58)

Plaintiff testified that she can stand for ten to twenty minutes before she has to sit down due to leg fatigue. (Tr. 47-48, 56) Plaintiff cannot lift anything over ten pounds. (Tr. 48) Plaintiff testified that she can sit for thirty minutes. (Tr. 57)

Plaintiff testified that she watches television during the day. (Tr. 50) Plaintiff has a difficult time being around men. (Tr. 62)

### B. The VE's Testimony

The VE testified regarding Plaintiff's work history, and Plaintiff's current ability to work.

The ALJ asked the VE a series of hypothetical questions to determine whether someone with Plaintiff's age, education, work experience, and specific functional limitations would be able to find a job in the local or national economy. (Tr. 65) The VE responded that such a hypothetical person would be able to perform the sedentary job duties of a document preparer, a dowel inspector, and a household appliance patcher. (Tr. 66-67) Plaintiff's counsel also questioned the VE. Counsel asked whether a limitation in typical workday of rotation of the neck or marked limitations as defined in the Medical Source Statement would interfere with normal workday activity. The VE advised that such limitations would preclude work.

### III. The ALJ's Decision

In a decision dated July 29, 2015, the ALJ determined that Plaintiff was not disabled under the Social Security Act. (Tr. 15-27) the ALJ determined that Plaintiff had severe impairments of chronic obstructive pulmonary disease ("COPD"), peripheral vascular disease (status post stent placements), chronic venous insufficiency, coronary artery disease, hypertension, type 2 diabetes, degenerative disc disease of the cervical spine (status post

fusion), carpal tunnel syndrome, depressive disorder, anxiety disorder, personality disorder, and obesity. (Tr. 14-15) The ALJ determined that Plaintiff had a residual functional capacity ("RFC") to perform sedentary work with the following modifications: she could lift, carry, push and/or pull up to ten pounds occasionally and five pounds frequently; she could sit six hours in an eight-hour workday, as well as stand or walk 15 minutes at a time up to two hours in total during said workday; she could occasionally stoop, kneel and crouch but could not climb or crawl; she could frequently reach and handle; she could not tolerate concentrated exposure to smoke, fumes, dust, and gases; she must avoid hazards such as dangerous machinery and unprotected heights; she was limited to simple and routine tasks; and she could have occasional interaction with supervisors, coworkers and the public, up to one-third of the workday.
(Tr. 18)

The ALJ concluded that Plaintiff could not return to her past relevant work as a nursing home cook or factory laborer. (Tr. 24) Based on hypothetical questions posed to the VE, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act because someone with her age, education and functional limitations could perform other work that existed in substantial numbers in the national economy, namely as a document preparer, a dowel inspector or a household appliance patcher. (Tr. 25)

The ALJ's decision is discussed in greater detail below in the context of the issue Plaintiff has raised in this matter.

**IV.  Standard of Review and Legal Framework**

"To be eligible for … benefits, [Plaintiff] must prove that [she] is disabled …." Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); see also Pearsall v.

5

Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A). A plaintiff will be found to have a disability "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) and 1382c(a)(3)(B). See also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, 20 C.F.R § 404.1520, "[t]he ALJ follows 'the familiar five-step process' to determine whether an individual is disabled…. The ALJ consider[s] whether: (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work." Martise v. Astrue, 641 F.3d 909, 921 (8th Cir. 2011) (quoting Halverson v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010)). See also Bowen, 482 U.S. at 140-42 (explaining the five-step process).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). The ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record as a whole. See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial

evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 964 F.3d 959, 965 (8th Cir. 2010) (same).

Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id. Specifically, in reviewing the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1. The credibility findings made by the ALJ.
2. The claimant's vocational factors.
3. The medical evidence from treating and consulting physicians.
4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.
5. Any corroboration by third parties of the claimant's impairments.
6. The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (citation omitted).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## V. <u>Medical Source Statement – Physical – Dr. Randy Foster, D.O.</u>

In the December 10, 2014, Medical Source Statement of Ability to Do Work-Related Activities (Physical) ("MSS"), Dr. Randy Foster, the family medicine consultative examiner, opined that Plaintiff could lift up to twenty pounds occasionally; sit twenty minutes at a time up to five hours; stand five to ten minutes at a time up to two hours; and walk five minutes at a time up to one hour total in an eight-hour work day, with occasional use of her hands and feet and occasional postural activities. (Tr. 321-26) Dr. Foster further opined that Plaintiff could not travel unassisted, walk a block at a reasonable pace, or make a simple meal. Dr. Foster admitted that his assessment was largely based on Plaintiff's subjective complaints and self-reported medical history, and Dr. Foster noted that he did not have any medical records to corroborate any of his findings. After completing a physical examination, Dr. Foster opined about Plaintiff's probable malingering by noting that "[t]he physical examination was not all that useful because of [Plaintiff's] probable exaggeration of impairment. If she was really as weak and her range of motion as poor as she attempted to lead me to believe, it would be difficult to walk across the floor or even open a car door, both of which I witnessed her doing."[3] (Tr. 337)

On December 24, 2014, the ALJ sent Dr. Foster's MSS to Plaintiff's counsel and informed her that counsel could submit any additional records (including a report from Plaintiff's treating physician), written comments concerning the MSS, or a written statement as to the facts and law she believes apply to the case or request a supplemental hearing. (Tr. 317-18) The ALJ advised Plaintiff's counsel that if he did not hear from her in ten days, he would

---

[3] "'[A]n ALJ may discount a claimant's allegations if there is evidence that a claimant was a malinger or was exaggerating symptoms for financial gain.'" <u>Davidson v. Astrue</u>, 578 F.3d 838, 844 (8th Cir. 2009) (quoting <u>O'Donnell v. Barnhart</u>, 318 F.3d 811, 818 (8th Cir. 2003)).

assume that she did not wish to submit any written statements or records or to request a supplemental hearing or orally question the author of the MSS. (Tr. 318) In a January 8, 2015, letter, counsel argued that Dr. Foster's MSS limited Plaintiff "to less than sedentary work. The ability to sit for only 20 minutes at a time would interfere with the ability to perform a sedentary job." (Tr. 338)

## VI. Analysis of Issue Presented[4]

In her brief to this Court, Plaintiff argues that the ALJ erred by failing to provide her medical records to Dr. Foster, one of the consultative examiners. Plaintiff further argues that the ALJ's subsequent decision to accord Dr. Foster's MSS only partial weight was the result of Dr. Foster not having her medical records during the consultation.

While the Regulations provide that the SSA "will give the examiner any necessary background information about your condition," 20 C.F.R. §§ 404.1517, 416.971, the Court is cited to no legal authority that mandates that the totality of a plaintiff's medical record be provided to the consultative evaluator beforehand, as Plaintiff contends.[5] In any event,

---

[4] Plaintiff does not challenge the ALJ's adverse credibility finding in her Brief. Moreover, the undersigned finds the ALJ complied with the strictures of Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), and there is substantial evidence in the record to support the ALJ's analysis of Plaintiff's credibility. A review of the ALJ's decision shows he partially discredited Plaintiff's subjective complaints for good reason and thoroughly discussed the objective findings of the health professionals, Plaintiff's improvement with treatment, probable malignering, daily activities, her work history, and inconsistencies in the record, in support of his adverse credibility determination. See Julin v. Colvin, 826 F.3d 1082, 1086 (8th Cir. 2016) (explaining that "[c]redibility determinations are the province of the ALJ" and the deference owed to such determinations); Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003) (holding that "[i]f an ALJ explicitly discredits the [plaintiff's] testimony and gives good reasons for doing so, [the reviewing court] will normally defer to the ALJ's credibility determination").

[5] Even if it was true that the SSA erred by failing to provide Dr. Foster with Plaintiff's medical records, Plaintiff has failed to show any harm inasmuch as the record was sufficiently developed to allow the ALJ to reach his decision, and Plaintiff has not shown the ALJ would have reached a different decision. See Brueggemann v. Barnhart, 348 F.3d 689, 695 (8th Cir.

Plaintiff was not precluded from submitting her medical records herself to Dr. Foster in advance of the consultative examination. Likewise, when given the opportunity to submit written comments concerning the MSS or orally question the author, Plaintiff did not raise this issue and only argued that Dr. Foster's MSS limited Plaintiff to less than sedentary work. Once again, at the hearing, the ALJ asked Plaintiff's counsel whether she had any objections to the evidence in the record, and counsel raised no objection regarding the sufficiency of Dr. Foster's MSS.

The Court agrees that Plaintiff's reliance on the Program Operations Manual System ("POMS") is misplaced, because nothing in the manual required the ALJ to provide a consultative examiner Plaintiff's entire medical record. But even if the POMS had directed the ALJ to provide Plaintiff's entire medical record, the ALJ would not be bound by that provision. Id. An ALJ does not commit reversible error by failing to comply with POMS because the manual "has no legal force, and it does not bind the SSA." Schweiker v. Hansen, 450 U.S. 785, 789 (1981); see also Shontos v. Barnhart, 328 F.3d 418, 424 (8th Cir. 2003) ("Although POMS guidelines do not have legal force and do not bind the Commissioner, this court has instructed that an ALJ should consider the POMS guidelines.")

The undersigned finds that the ALJ relied, at least in part, on the MSS completed by Dr. Foster in formulating her RFC. A review of the MSS shows that it was based upon a limited physical examination by Dr. Foster and Plaintiff's self-reported history, and only modest objective testing, such as range of motion testing and the Mini-Mental State Exam. (Tr. 321-37) The ALJ accorded the MSS "only partial weight" opining that "Dr. Foster's findings

---

2003) (harmless error can be applied to an ALJ's decision); Byes v. Astrue, 687 F.3d 913, 917-18 (8th Cir. 2012) (to show that an error was not harmless, a claimant must provide some indication that the ALJ would have decided the case differently if the error had not occurred).

regarding [Plaintiff's] ability to lift, sit, stand, and walk are consistent with the weight of the evidence of record, such as [Plaintiff's] improvement with treatment and activities of daily living, and are generally consistent with the residual functional capacity.  However, Dr. Foster admitted that his assessment was largely based on [Plaintiff's] subjective complaints and reported medical history, while [Plaintiff] had 'probable exaggeration' on exam."  (Tr. 23)  Dr. Foster further opined that "[i]f she was really as weak and her range of motion as poor as she attempted to lead me to believe, it would be difficult to walk across the floor or even open a car door, both of which I witnessed her doing."  (Id.)  The ALJ accorded Dr. Foster's opinion only partial weight because Dr. Foster relied heavily on Plaintiff's subjective complaints and reported medical history after questioning Plaintiff's "probable exaggeration of impairment." See McCoy v. Astrue, 648 F.3d 605, 616-17 (8th Cir. 2011) (ALJ may reject a medical opinion if it is "inconsistent with the record as a whole" or "based, at least in part, on [the claimant's] self-reported symptoms" where the claimant is deemed not credible.).

## VII. Conclusion

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.  See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008).  Similarly, the Court cannot say that the ALJ's determinations in this regard fall outside the available "zone of choice," defined by the record in this case.  See Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011).  For the reasons set forth above, the Commissioner's decision denying benefits is affirmed.

11

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner be **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of August, 2017.